825 A.2d 585 (2003)
361 N.J. Super. 362
E. DICKERSON & SON, INC., Estevez Group, Inc., Food Circus Super Markets, Inc., Food King, Inc., Franelen, Inc., Charlann, Inc., 444 Fulton Management Corp., Harp Marketing Corporation, LJV, Inc., Manyfoods, *586 Inc., Nicholas Markets, Inc., Norkus Enterprises, Inc., Ramlac Corporation/Bell Beef Co., Sidney Charles Markets, Inc., Supermarket Acquisition Co., LLC, V & V Supermarkets, Inc., Oliva Supermarkets, LLC, Foodtown, Plaintiffs-Appellants,
v.
ERNST & YOUNG, LLP, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 2003.
Decided June 26, 2003.
Robert P. Zoller, Trenton, argued the cause for appellant (Sterns & Weinroth, attorneys; Mr. Zoller, of counsel; Marshall D. Bilder, on the brief).
Douglas S. Eakeley, Roseland, argued the cause for respondent (Lowenstein Sandler, attorneys; Mr. Eakeley, of counsel; Cecelia E. Haney and Patricia A. Connell, on the brief).
Before Judges STERN, COBURN and COLLESTER.
The opinion of the court was delivered by COBURN, J.A.D.
Plaintiffs sued defendant, Ernst & Young, LLP, a public accounting firm, alleging that its negligence in performing audits for another entity caused them damages. Defendant filed a motion to dismiss for "failure to state a claim upon *587 which relief can be granted." R. 4:6-2(e). The trial court granted the motion, and plaintiffs appeal. We affirm because the allegations of the complaint do not meet the requirements of N.J.S.A. 2A:53A-25, which governs the negligence liability of accountants to third parties for all transactions entered into after March 17, 1995. L 1995, c. 49, § 2.

ITHE COMPLAINT
The complaint, read indulgently, as is required by Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989), alleges the following facts. Plaintiffs, corporations owning and operating supermarkets, are members or stockholders of Twin County Grocers, Inc. ("Twin County"), a wholesale distributor of supermarket products, described as "a cooperative organization, serving the mutual needs of its supermarket members ...." Most of the individual owners of plaintiff corporations were also members of Twin County's Board of Directors. Twin County engaged defendant as its accountant for the primary purpose of conducting audits "to provide reasonable assurance of detecting errors and irregularities that were material to Twin County's financial statements." The annual audits were performed negligently for four years, and as a result failed to disclose that one of the directors had perpetrated numerous frauds "that adversely impacted Twin County and members of the Twin County Cooperative, including the plaintiffs." Defendant "knew that members of Twin County's Board of Directors, including plaintiffs' owners, relied on defendant's audit services in connection with their individual store operations including, but not limited to, their individual decisions regarding the nature and extent of their continued participation in the Twin County cooperative." Each plaintiff suffered "unique damages that may not otherwise be recoverable by Twin County ...." Plaintiffs separately allege that based on the above facts defendant breached a fiduciary duty to inform them about the fraudulent acts "about which defendant should have made itself aware." Finally they seek relief as third-party beneficiaries of the engagement agreement, alleging that defendant had a "written obligation to report directly to Twin County's Board of Directors and their respective operating entities ...." However, the engagement letters make no reference to reporting to anyone other than Twin County.[1]

IILAW
The subject of an accountant's liability to third parties for negligence in performing work for a client has generated a variety of judicial and legislative reactions. For comprehensive discussions, see Bily v. Arthur Young & Co., 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992), and Christine M. Guerci, Annotation, Liability of Independent Accountant to Investors or Shareholders, 48 A.L.R. 5th 389 (1997). In New Jersey, the subject was initially resolved as a matter of common law. H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983). Now it is governed by legislation, N.J.S.A. 2A:53A-25, which provides as follows:
a. As used in this act:
(1) "Accountant" means a person who is registered as a certified public accountant pursuant to the provisions of P.L.1977, c. 144 (C. 45:2B-1 et seq.), or an accounting firm which is organized for the practice of public accounting pursuant *588 to the provisions of P.L.1977, c. 144 (C. 45:2B-1 et seq.) and P.L.1969, c. 232 (C. 14A:17-1 et seq.).
(2) "Bank" means a State or federally chartered bank, savings bank, savings and loan association, credit union, a group of such institutions or its affiliates, subsidiaries, co-lenders, successors or assigns.
(3)"Client" means the party directly engaging an accountant to perform a professional accounting service.
(4)"Professional accounting service" includes, but is not limited to, the compilation, review, certification, or audit of, or the expression of a professional opinion or other reporting on, a financial statement or other information covering a specified period of time.
(5) "Specified transaction" means a particular transaction between a client and a claimant.

b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:
(1) The claimant against the accountant was the accountant's client; or
(2) The accountant:
(a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

(b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
(c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service; or
(3) In the case of a bank claimant, the accountant acknowledged the bank's intended reliance on the professional accounting service and the client's knowledge of that reliance in a written communication.

[Emphasis added.]
When called upon to interpret a statute, the "overriding goal has consistently been to determine the Legislature's intent." Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995). When the language is clear, we generally rely on its plain meaning. O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). However, if "literal application of the language used would lead to results incompatible with the legislative design," we are obliged "to give effect to the obvious purpose of the Legislature ...." New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957). In that circumstance " `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.'" Ibid. (citations omitted).
In Rosenblum, supra, the Court determined that in certain circumstances "accounting firms should no longer be permitted to hide within the citadel of privity and avoid liability for their malpractice." 93 N.J. at 353, 461 A.2d 138 (emphasis added). The statute with which we are concerned, N.J.S.A. 2A:53A-25, was introduced by its sponsor for the specific purpose of limiting the effect of that decision:
This bill would limit accountants' liability to third parties for the accountants' negligent acts. Although accountants' civil liability has historically been limited by common law, which required *589 that there must be privity (a direct relationship) between an accountant and any party bringing suit against him, recent case law has weakened this concept. In [H.] Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983), the New Jersey Supreme Court expanded the scope of accountants' liability to include all "reasonably foreseeable" plaintiffs, such as stockholders and potential investors.
Thus, an accountant providing professional services to a client is vulnerable to lawsuits by virtually any member of the investing public at large, regardless of whether the accountant had any previous relationship with that person or any knowledge that the person would rely on the services the accountant rendered.
The sponsor believes that this situation is particularly unjust in light of the fact that an accountant is rarely the primary wrongdoer in negligence cases. Instead, the accountant is sued because he failed to detect the fraud of his client. In many cases, an accounting firm is sued because it has "deep pockets," in contrast to its client, which may have become insolvent by the time the investors realize they have been defrauded.
This bill would restore the concept of privity to accountants' liability towards third parties. The bill provides that an accountant will not be liable for damages for negligence to any person unless:
(1) the person was the accountant's client, or
(2) the accountant knew that the person (who was specifically identified to the accountant at the time the services were rendered) intended to rely upon the accountant's services in connection with a specified transaction, and the accountant expressed his understanding of that reliance.
 [Statement attached to S.826 (March
 10, 1994).]
The sponsor's intentions in that regard are clearly expressed in the statute, and literal application of the words of the statute to the circumstances of this case is entirely consistent with the overall legislative design.
Under subsection b(2) of the statute, the accountant must know when engaged, or must thereafter agree with the client, that his work will be made available to a "specifically identified" claimant "in connection with a specified transaction made by the claimant." N.J.S.A. 2A:53A-25 (b)(2)(a). And subsection a(5) limits the transactions to those occurring between the claimant and the client N.J.S.A. 2A:53A-25(a)(5). Further, the accountant must have known that the claimant "intended to rely" on his services "in connection with that specified transaction." N.J.S.A. 2A:53A-25 (b)(2)(b). But even such knowledge is not enough. There can be no liability unless the accountant used words or conduct "directly expressed to the claimant," which establish the accountant's understanding of the claimant's intended reliance on his work. N.J.S.A. 2A:53A-25(b)(2)(c).
The complaint neither alleges expressly, nor implies, satisfaction of any of the elements of this statute. Consider first its description of plaintiffs' transactions giving rise to damages: "individual store operations" and "the nature and extent of their continued participation in the Twin County cooperative." Since the first category does not allege a transaction between the client, Twin County, and the claimant, subsection a(5) is not satisfied. While the second category is suggestive of a transaction between each plaintiff and client, it hardly describes, or suggests, a particular transaction, which is fatal under this section.
Although the complaint alleges defendant's knowledge respecting the private *590 business interests of plaintiffs, it does not allege that plaintiffs were specifically identified as possible claimants. Moreover, the assertion that plaintiffs' relied on the audit services in connection "with their individual decisions regarding the nature and extent of their continued participation" in Twin City, quite obviously fails to allege any specific transaction in which plaintiffs were going to engage with the client. Therefore, the complaint fails to satisfy subsection b(2)(a) and (b). Finally the complaint does not contain any language even suggesting that defendant provided any expression directly to plaintiffs, let alone one reflecting an understanding that they intended to rely on the audits. Therefore, subsection b(2)(c) has not been satisfied.
Plaintiffs' arguments respecting the doctrines of fiduciary duty and third-party beneficiary contracts as bases for this suit are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Since the engagement letters are referenced in the complaint, they could be considered without converting the motion into one for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997).