846 A.2d 1237

E. DICKERSON & SON, INC., ESTEVEZ GROUP, INC., FOOD CIR-CUS SUPER MARKETS, INC., FOOD KING, INC., FRANELEN, INC., CHARLANN, INC., 444 FULTON MANAGEMENT CORP., HARP MARKETING CORPORATION, LJV, INC., MANYFOODS, INC., NICHOLAS MARKETS, INC., NORKUS ENTERPRISES, INC., RAMLAC CORPORATION/BELL BEEF CO., SIDNEY CHARLES MARKETS, INC., SUPERMARKET ACQUISITION CO., LLC, V & V SUPERMARKETS, INC., OLIVA SUPERMAR-KETS, LLC AND FOODTOWN, PLAINTIFFS–APPELLANTS, v. ERNST & YOUNG, LLP, DEFENDANT–RESPONDENT.

Argued March 1, 2004—Decided May 6, 2004.

*Robert P. Zoller,* argued the cause for appellants (*Sterns & Weinroth,* attorneys; *Mr. Zoller, Marshall D. Bilder* and *Dana Haymes,* on the briefs).

*Douglas S. Eakeley,* argued the cause for respondent (*Lowenstein Sandler,* attorneys; *Cecelia E. Haney,* on the brief).

*Michael K. Furey,* submitted a brief on behalf of *amicus curiae,* New Jersey Society of Certified Public Accountants (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Mr. Furey* and *Michael E. Gogal,* on the brief).

Judge KING (temporarily assigned) delivered the opinion of the Court.

We granted certification in this matter to consider for the first time *L.* 1995, *c.* 49, now codified at *N.J.S.A.* 2A:53A–25, which governs an accountant's liability to third parties for negligence. 178 *N.J.* 249, 837 *A.*2d 1092 (2004). We affirm the decision of the Appellate Division substantially for the reasons stated in Judge Coburn's opinion, *E. Dickerson & Son v. Ernst & Young,* 361 *N.J.Super.* 362, 825 *A.*2d 585 (App.Div.2003).

The procedural history and factual underpinnings of the case are recounted in the opinion of the Appellate Division. *See E. Dickerson & Son,* 361 *N.J.Super.* at 364–65, 825 *A.*2d at 586–87. After considering statutory language and legislative history, the panel concluded that the claims by the seventeen corporate plaintiffs arising from allegedly inaccurate annual audits did not satisfy the requirements for accountant third-party liability at *N.J.S.A.* 2A:53A–25b(2)(a), (b) and (c). The panel affirmed the Law Division's *R.* 4:6–2(e) dismissal with prejudice.

All parties agree that defendant Ernst & Young's accounting services were rendered to Twin County Grocers, Inc. as the "client," which was driven into bankruptcy and liquidation by the fraudulent conduct of its management. Thus, the plaintiff had to satisfy the conditions of subsections (2)(a),(b) and (c):

b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:

(2) The accountant:

(a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

(b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

(c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service[.]

[*N.J.S.A.* 2A:53A–25b(2)(a), (b) and (c).]

As Judge Coburn observed, none of those conditions was satisfied by the plaintiff corporations' pleaded claims. 361 *N.J.Super.* at 368, 825 *A.*2d at 589–90. The Appellate Division precisely and correctly ruled:

The complaint neither alleges expressly, nor implies, satisfaction of any of the elements of this statute. Consider first its description of plaintiffs' transactions giving rise to damages: "individual store operations" and "the nature and extent of their continued participation in the Twin County cooperative." Since the first category does not allege a transaction between the client, Twin County, and the claimant, subsection a(5) is not satisfied. While the second category is suggestive of a transaction between each plaintiff and client, it hardly describes, or suggests, a particular transaction, which is fatal under this section.

Although the complaint alleges defendant's knowledge respecting the private business interests of plaintiffs, it does not allege that plaintiffs were specifically identified as possible claimants. Moreover, the assertion that [plaintiffs] relied on the audit services in connection "with their individual decisions regarding the nature and extent of their continued participation" in Twin [County], quite obviously fails to allege any specific transaction in which plaintiffs were going to engage with the client. Therefore, the complaint fails to satisfy subsection b(2)(a) and (b). Finally the complaint does not contain any language even suggesting that defendant provided any expression directly to plaintiffs, let alone one reflecting an understanding that they intended to rely on the audits. Therefore, subsection b(2)(c) has not been satisfied.

[*Id.* at 368–69, 825 *A.*2d at 589–90.]

Professor Feinman has recently and comprehensively reviewed the subject of auditor's liability for professional negligence. Jay M. Feinman, *Liability of Accountants for Negligent Auditing: Doctrine, Policy and Ideology*, 31 *Fla. St. U.L. Rev.* 17 (2003). As to the national picture, he states:

Auditor liability is a particularly interesting doctrinal problem because of the diversity of approaches to liability. A few states still require that a third party be in privity or a similarly close relationship with the auditor to recover. Several others allow any foreseeably injured party to recover. Most states have taken a middle ground by adopting the negligent misrepresentation standard of the *Restatement (Second) of Torts*, section 552. That standard, however, is notably

diffuse, so courts applying it still range from a near privity requirement to a foreseeability test.

[*Id.* at 20.]

As to New Jersey's approach upon the statute's modification of the common-law forseeability rule previously adopted in our state by *H. Rosenblum, Inc. v. Adler,* 93 *N.J.* 324, 461 *A.*2d 138 (1983), Professor Feinman states:

Of the jurisdictions that have adopted the requirement that there be a relationship approaching privity, nearly all have done so by using the [test in *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 *N.Y.*2d 536, 493 *N.Y.S.*2d 435, 483 *N.E.*2d 110, 118–19 (1985)] as an appropriate standard.

A few states have adopted the rule of privity or a near substitute by statute. The American Institute of Certified Public Accountants has promoted legislation of this type in a model statute that closely resembles the *Credit Alliance* test. New Jersey has adopted a modified version of this statute that has some changes in the language and a special exception for bank plaintiffs.

[Jay M. Feinman, *Professional Liability to Third Parties,* § 8.4.1 at 128 (American Bar Association 2000).]

We find that the manifest legislative intent in adopting *N.J.S.A.* 2A:53A–25 was to limit the impact of our 1983 *Rosenblum* decision that greatly expanded the scope of accountants' liability to all reasonably foreseeable claimants, including stockholders and public investors. As the sponsor's statement expressed, "This bill would restore the concept of privity to accountants' liability towards third parties." *See E. Dickerson & Son,* 361 *N.J.Super.* at 367, 825 *A.*2d at 589 (quoting in full Statement attached to S. 826 (March 10, 1994)); *see also Finderne Management Co. v. Barrett,* 355 *N.J.Super.* 197, 205, 809 *A.*2d 857, 862 (App.Div.2002).

Plaintiff corporations appear to invoke a special status to escape the rigors of the accountants' liability statute. They owned and operated over 100 supermarkets. These corporations were stockholders in Twin County Grocers, Inc., which they describe as "a cooperative organization serving the mutual needs of its supermarket representatives." Most of the individual owners of the plaintiff corporations were also members of the board of directors of the self-styled "Twin County Cooperative." However, Twin County was a regular business corporation and the plaintiff corporations were its individual stockholders. Twin County was not

formally organized as a buying cooperative under any New Jersey law, but was a New Jersey general corporation in which these plaintiffs were shareholders.

Specific types of cooperative business enterprises are addressed in our statutes to varying degrees. These include milk producer cooperatives (*N.J.S.A.* 4:12–1), agricultural cooperatives (*N.J.S.A.* 4:13–1 to 13–50), library cooperatives (*N.J.S.A.* 18A:73–35b), cooperatives of veterinarians, doctors, or dentists (*N.J.S.A.* 45:16–1.1), electricity cooperatives (*N.J.S.A.* 48:2–13.1), water cooperatives (*N.J.S.A.* 48:2–13.2), limousine cooperatives (*N.J.S.A.* 48:16–22.4), fuel cooperatives (*N.J.S.A.* 52:27F–39), and telecommunications service provider cooperatives (*N.J.S.A.* 56:8–86). Some of these cooperative statutes are specific on how the cooperative is formed, as with agricultural cooperatives. Other statutes simply allude to "cooperatives" generally.

We perceive no special status which plaintiffs achieved by reason of their announced cooperative purpose that could distinguish them from the individual shareholders of an accountant's corporate client. They are still required to meet the qualifying conditions of *N.J.S.A.* 2A:53A–25, notwithstanding their collective endeavor to enhance their market position. We conclude that the plaintiff corporations were not the "clients" of defendant Ernst & Young within the statutory definition, *i.e.* "[parties] directly engaging an accountant to perform a professional accounting service." *N.J.S.A.* 2A:53A–25(a)(3). Twin County alone was Ernst & Young's client. And, for the reasons Judge Coburn carefully explained, *E. Dickerson & Son,* 361 *N.J.Super.* at 368–69, 825 *A.*2d at 589–90, the plaintiffs' reliance on annual audit reports alone cannot satisfy the "specified transaction" definition in the statute, that is, "a particular transaction between a client and a claimant." *N.J.S.A.* 2A:53A–25(a)(5).

At oral argument, counsel for Ernst & Young explained how conditions for liability to third parties, like the plaintiffs, could have been met in a commercially reasonable manner. Twin County and a potential creditor or investor specifically could have

indicated to the accountant reliance on an annual audit for a particular loan or investment transaction and secured an engagement letter or other understanding to that effect. This acknowledgement of third-party reliance would alert the accountant who could then calculate the risk and exposure from the transaction.

General reliance by these individual corporate stockholders of Twin County on annual audits was not sufficient to satisfy the statutory conditions for liability and confer a cause of action for accounting negligence. Nor is this a stockholders' derivative action for the benefit of the accountants' "client," Twin County. *See In re PSE & G Shareholder Litigation,* 173 *N.J.* 258, 801 *A.*2d 295 (2002). This is an action for the benefit of the plaintiff corporations and their shareholders. Twin County itself never sued Ernst & Young for damages. Twin County did sue its culpable management, which perpetrated the fraud, in an action, we are told, that was settled and dismissed.

Moreover, the seventeen corporate plaintiffs did not tender any supplementary proffer of facts to the Law Division judge or on appeal which could suggest that their individual claims for consequential negligence damages, generously construed, would fall within the statute's conditions for liability. *See Printing Mart v. Sharp Electronics,* 116 *N.J.* 739, 746, 771–72, 563 *A.*2d 31, 34, 47–48 (1989) (addressing *R.* 4:6–2(e)).

Affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, VERNIERO, and ZAZZALI and Judges KING, SKILLMAN, and KESTIN (temporarily assigned)—7.

*Opposed*—None.