NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3713
_____

OVERLAND LEASING GROUP, LLC,

Appellant,

v.

FIRST FINANCIAL CORPORATE SERVICES INC.;
FORTRAN GROUP INTERNATIONAL, INC.;
F.F.C. SERVICES, INC.;
GEORGE R. FUNARO & CO., P.C.;
KMA ASSOCIATES;
DINESH DALMIA; RADHA DALMIA;
IGTL SOLUTIONS (USA), INC.;
VANGUARD INFO-SOLUTIONS CORPORATION;
GREG L. RHODES; THOMAS TURRIN & CO, CPA, P.C.;
AND JOHN DOES I THROUGH IX

GEORGE R. FUNARO & CO., P.C.,
                              Third Party Plaintiff,

v.

SANJEET ANAND and JOHN DOES I through X,
                              Third Party Defendants,

THOMAS TURRIN & CO., CPA, P.C.,
                              Third Party Plaintiff,

v.

R. VIJAYKUMAR; SANJEET ANAND; JOHN DOES, I through X,
                              Third Party Defendants,

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-5850)
District Judge:  Hon. Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2011

Before:  CHAGARES, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed:  July 7, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Overland Leasing Group, LLC, ("Overland"), appeals the decision of the United

States District Court for the District of New Jersey granting summary judgment in favor

of George R. Funaro & Co., P.C., ("Funaro"), and Thomas Turrin & Co., CPA, P.C.

("Turrin").  For the reasons that follow, we will affirm.

I.     **Background**

In 2004, Allserve Systems Corp., ("Allserve") leased computer equipment from

Fortran Group International, Inc. ("Fortran") and First Financial Corporate Services, Inc.,

("First Financial"), pursuant to a master lease agreement.  Overland acquired Fortran's

and First Financial's interests in that leased equipment in March 2005.  Prior to that,

Funaro, which is an accounting firm, issued an Independent Auditor's Report ("Funaro

2

Report") of Allserve's financial statements in June 2004[1] and a report compiling

Allserve's financial statements in January 2005 (the "Compilation"). Near the end of

July 2005, Turrin, another accounting firm, prepared an audit report ("Turrin Report") of

Allserve's finances for the year ending March 31, 2005. In August 2005, Allserve ceased

making payments on the equipment and subsequently declared bankruptcy.

In December 2006, Overland filed suit against numerous parties, including Funaro

and Turrin (together, "Appellees"). Overland alleged that it was defrauded during the

purchase of the equipment leased to Allserve and that Appellees furthered that fraud by

preparing financial statements and audits that did not accurately reflect the financial

condition of Allserve. Specifically, Overland alleged both that Appellees committed

accountants' malpractice and negligent misrepresentation of financial information and

that Appellees intentionally and recklessly misrepresented Allserve's financial condition.

The District Court granted Appellees' motions for summary judgment on those

claims. Applying New Jersey law pursuant to its previous conflict of laws analysis, the

District Court held that a non-client, such as Overland, cannot recover from accountants,

such as Appellees, for malpractice and negligent representation unless it can establish the

three elements set forth in N.J. Stat. Ann. § 2A:53A-25(b)(2) (the "New Jersey Statute"),

namely that the accountants agreed that their services would be made available to the

---

[1] In September 2004, Funaro learned of discrepancies in Allserve's audited financial statements and demanded return of all the copies of the Funaro Report. Ultimately, through the efforts of its staff and outside counsel, Funaro located 38 of the original 40 copies of the Funaro Report issued to Allserve.

third party who was specifically identified to them, that the accountants knew the third party would rely on the professional accounting service in connection with a specific transaction, and that the accountants directly expressed their understanding of the third party's intended reliance.

Viewing the facts and inferences in the light most favorable to Overland, the District Court held that there was no genuine issue of material fact and that Overland had failed to adduce evidence establishing any of the elements of the New Jersey Statute with respect to either of the Appellees. The District Court also found in favor of Appellees on Overland's intentional tort claim. In its timely appeal, Overland has limited its arguments to the District Court's decision on the malpractice and negligent misrepresentation claims.

## II.    Discussion[2]

Overland argues that the District Court erred in deciding that the New Jersey Statute applies to the Appellees. It says that the New Jersey Statute applies only to accountants licensed in New Jersey, not to accountants licensed in other states, as Appellees are. We need not address the merits of that argument here, however, for even

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of an order granting summary judgment, "may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party," and "may affirm the District Court on any grounds supported by the record." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (internal quotation marks omitted).

if the New Jersey Statute does not apply to Appellees, New York law would and Appellees would still prevail.[3]

Without the New Jersey Statute, New Jersey law demands application of the broad common-law foreseeability rule. *Cf. E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 846 A.2d 1237, 1240 (N.J. 2004) (holding that "the manifest legislative intent in adopting [the Statute] was to … restore the concept of privity to accountants' liability towards third parties"). New York's law, however, requires a relationship between accountants and third parties "approach[ing] that of privity" before liability attaches to an accountant's acts of negligence – a standard very similar to that imposed under the New Jersey Statute. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 119 (N.Y. 1985) (internal quotation marks omitted). Therefore, since the outcome of the negligence claim might differ under New Jersey law (sans Statute) and New York law, we must conduct a conflict-of-laws analysis under the law of the forum state, New Jersey. *See Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 150 (3d Cir. 2001) (observing that, in a diversity case, the conflict-of-laws rules of the forum state apply).

New Jersey law directs us to the *Restatement (Second) of Conflict of Laws* (1971) (the "Restatement"), to determine which state's law to apply. *See P.V. ex rel. T.V. v.*

---

[3] The District Court chose to apply New Jersey law after finding that New York law and New Jersey law – inclusive of the New Jersey Statute – were substantively the same. If the New Jersey Statute applies to Appellees, we agree with that analysis and the District Court's disposition of the case. Since we choose to avoid the state law issue concerning the applicability of the Statute, our analysis proceeds on a different track.

5

*Camp Jaycee*, 962 A.2d 453, 455 (N.J. 2008) (applying the Restatement in a conflict-of-laws analysis in a tort action); *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d 942, 986 (N.J. Super. Ct. 2003) (applying § 148 of the Restatement in a conflict-of-laws analysis in an action for misrepresentation); *Vail v. Pan Am Corp.*, 616 A.2d 523, 527 n.3 (N.J. Super Ct. App. Div. 1992) (citing to § 148 of the Restatement for conflict-of-laws rules regarding misrepresentation). Three sections of the Restatement are relevant to a conflict-of-laws analysis in this case. First, § 6 of the Restatement prescribes several "cornerstone" factors relevant to choosing the appropriate rule of law, *see Camp Jaycee*, 962 A.2d at 458 (acknowledging § 6 of the Restatement as the "cornerstone of the entire Restatement"), including "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," "the protection of justified expectations," "certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied[,]" RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

Second, § 145 of the Restatement provides specific guidance for choosing which rule of law is appropriate to apply in tort actions: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971). Section 145 also includes four specific factors to be weighed when determining which state has the most significant relationship: "(a) the place where

the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971).

Third, § 148 of the Restatement highlights additional relevant factors to be considered in a conflict-of-laws analysis for actions concerning misrepresentation, including negligent misrepresentation, when a plaintiff's reliance took place at least in part in a state other than where the false representations were made.[4]  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) (1971).  Those additional factors include:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, … (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.*

Many of those factors referenced in the Restatement are relevant and readily apparent from the record.  Overland is a Delaware company with headquarters in Massachusetts and an office in New York; Appellees are accountants licensed in New

---

[4] We assume, for the sake of completeness, that some of Overland's reliance took place in New Jersey, even though the record appears to indicate that Overland's reliance took place wholly in New York.  Otherwise, if Overland's reliance occurred wholly in New York, § 148 of the Restatement would expressly direct application of New York law since the reliance and representations occurred in the same state.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS §  148(1) (1971).

York; and Allserve is a Texas company with a principal place of business in New Jersey. The alleged negligent misrepresentations of the Appellees are within the reports finalized at and disseminated from Appellees' offices in New York.[5] The agreements by which Overland acquired its interest in the leased equipment were executed by a representative of Overland's New York office, listed Overland's contact address in New York, and designated New York law as controlling. It also appears that some, if not all, of Overland's activity involving review of the reports produced by Appellees and the reliance by Overland on those reports occurred in New York.[6] Furthermore, while New Jersey has an interest in ensuring that companies that operate within its borders do not employ negligent accountants to audit their books, New York has a compelling interest in applying its law in a predictable, uniform manner to activities by New York licensed accountants that occurred in New York and that allegedly induced a company's New York employees to enter into a contract on behalf of their employer in which New York law was chosen as controlling. In light of these considerations, New York law is

---

[5] Whatever work Appellees may have done in New Jersey, if any, to prepare their reports, the alleged misrepresentations that form the basis of Overland's cause of action occurred in New York.

[6] Overland asserts that "decisions are made" at its principal place of business in Boston, Massachusetts. (Reply Brief at 15, 17.) However, Stephan Parisi, the primary credit analyst for Overland at the time of the transaction at issue here, stated during his deposition that he, his boss, and his boss's supervisor were responsible for "perform[ing] the credit analysis for th[e] transaction" and were located in Overland's New York office. (App. at 545-47, 551.)

8

properly applied to Overland's accountants' malpractice and negligent misrepresentation claims.

Under New York law, Appellees cannot be liable to Overland "for the negligent preparation of financial reports" unless a relationship "approach[ing] that of privity" existed between them; i.e., "(1) [the Appellees] must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which [Overland] was intended to rely; and (3) there must have been some conduct on the part of [Appellees] linking them to [Overland], which evinces [Appellees'] understanding of [Overland's] reliance." *Credit Alliance*, 483 N.E.2d at 115, 118.

Overland has presented no evidence upon which a reasonable jury could rely to find that such a relationship existed between it and either Appellee. There is no evidence in the record that either Appellee communicated with Overland with respect to the purchase of the leased equipment at issue or that either Appellee exhibited any conduct that would show that they knew or understood that Overland was relying on the representations Appellees made in the reports at issue.[7] Therefore, Overland's claims

---

[7] Nor is there any evidence on which a reasonable jury could rely to find that Overland actually relied on any representation made by either Appellee when deciding whether or not to purchase the leased equipment. Overland's primary credit analyst stated that his report to Overland's Investment Committee regarding the underwriting and recommendation for purchasing the leased equipment from Fortran did not rely on the Funaro Report and that he did not receive the Compilation until after issuing a commitment letter to one defendant involved in the purchase and on the same day as issuing its commitment letter to Fortran. Likewise, the Turrin Report did not even exist at the time that Overland decided to purchase the leased equipment.

9

against the Appellees must fail, and summary judgment in favor of Appellees was proper.[8]

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[8] Overland also asserts that even if Funaro is "insulated by the [New Jersey Statute]" for the opinions in the Funaro Report, Funaro is still liable under the "standards of ordinary negligence" for its failed attempt to retrieve every copy of the Funaro Report after learning of the document's potential inaccuracies. (Appellant's Opening Brief at 30.) That argument is unpersuasive. The harm Overland claims that it suffered from Funaro's alleged common law breach of a duty to diligently track down every copy of the Funaro Report is that it relied on the misrepresentations in a copy of that Report that Funaro failed to locate. That line of reasoning, of course, is inconsistent with our conclusion that, under New York law, the benefit of liability extends only to those in a relationship "approaching privity" with the accountant. *Credit Alliance*, 483 A.2d at 115. The liability theory Overland presses is even further removed from the idea of privity, and we do not think New York would extend the benefit of accountant liabilty to someone who happens on a stray report.