**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3479-22

OGGI E. DOMANI WEST NEW
YORK, LLC,

    Plaintiff-Appellant,

v.

RICHARD MAZAWEY, ESQUIRE,
and THE MAZAWEY LAW FIRM,

    Defendants-Respondents.

_____

Argued October 16, 2024 – Decided November 4, 2024

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2690-20.

Kenneth S. Thyne argued the cause for appellant (Simon Law Group, LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs).

Spenser F. Frieri argued the cause for respondents (Wood Smith Henning Berman LLP, attorneys; Spenser F. Frieri and Cynthia D. Whipple, on the brief).

PER CURIAM

In this legal malpractice action, plaintiff Oggi E. Domani West New York, LLC, appeals from the June 9, 2023 Law Division order granting defendants, Richard Mazawey, Esq.'s and the Mazawey Law Firm's[1] motion to dismiss plaintiff's complaint for failure to state a claim. We affirm in part, reverse in part, and remand for further proceedings.

I.

We review the allegations in plaintiff's complaint as true and accord "every reasonable inference of fact."[2] See Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 67 (App. Div. 2023) (quoting Major v. Maguire, 224 N.J. 1, 26 (2016)). Plaintiff was a limited liability corporation formed in January 2016 and located in Paterson. Plaintiff's members were Steven Paradiso, Patricia Rivas,

---

[1] We note defendants' merits brief references Mazawey's Law Firm as the Law Office of Richard A. Mazawey. For purposes of this opinion, we have used the captioned firm name.

[2] Providing all favorable inferences, we have considered plaintiff's appendix exhibits referenced in its amended complaint. We note neither party objected to the consideration of the documents specifically referred to in the complaint "without converting the motion into one for summary judgment." Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003)).

Anthony Mercedes, Giovanni Granata, and Achille Scialoia.[3]  Plaintiff searched for a commercial property to accommodate "a restaurant, bakery and retail sales . . . [and] auxiliary offices."  Mercedes spearheaded the acquisition of a property for plaintiff to lease and had selected Mazawey as counsel.  Mercedes worked with Michaelangelo Russo, a non-member agent of plaintiff, who was designated as the primary contact person to work with Mazawey and Michael Cervelli, a licensed real estate broker with Real 2 Estate, LLC.

On March 9, Russo signed a retainer agreement with defendants for legal services.  Plaintiff retained Mazawey to assist in negotiating and securing a commercial lease for a property located at 6600 Hillside Road, West New York.  The property was an abandoned warehouse owned by 6600 River Road Associates, LLC (6600 River).

In May, Mazawey represented plaintiff in lease negotiations with 6600 River for the property.  While representing plaintiff, Mazawey interacted with Russo, Mercedes, Granata, and Scialoia.  Jack Zakim, Esq. represented 6600 River.  Cervelli served as 6600 River's real estate broker.  Plaintiff had also hired

---

[3]  As there are multiple spellings of Achille Scialoia's name in the record, we have adopted the spelling used in plaintiff's briefs.

A-3479-22

an engineering company to survey the property, create plans for the property, and later, to address a sewer issue.

Paradiso signed an initial letter of intent for the property and entered a company resolution, dated June 30, authorizing him to sign all documents on plaintiff's behalf. After plaintiff and 6600 River negotiated the lease through counsel over a period of about three months, the following documents were entered: a three-year lease agreement, dated July 1; a lease rider; a future option to purchase the property, dated July 1; and Rivas's and Paradiso's personal lease guarantees. Plaintiff later alleged Rivas's and Paradiso's executed personal guarantees were forgeries. On July 1, plaintiff took possession of the property to operate a café, restaurant, bakery, and other retail sales. Plaintiff retained separate counsel to represent it regarding the property, land use, and zoning issues.

After taking possession of the property, plaintiff discovered no sewer connection existed. Plaintiff pursued zoning approvals with the West New York Building Department but learned approvals were unobtainable without the sewer connection. Plaintiff could not obtain a certificate of occupancy without sewerage, thereby rendering the building uninhabitable. Pursuant to lease section 28.3, 6600 River was responsible for the cost and expense of removing

4

general building code violations that precluded plaintiff from obtaining a certificate of occupancy. Additionally, pursuant to lease rider section 2, in the event plaintiff did not receive approvals from West New York for its intended use on or before September 30, it had the right to accelerate the lease termination date on ten days' notice to 6600 River. Section 6 of the rider emphasized time was of the essence with respect to all time provisions in the lease rider.

Plaintiff contacted 6600 River seeking to resolve the sewer issue and proposed a rent abatement to cover the costs of repairs. Russo had also contacted Mazawey advising him of the sewer issues. Plaintiff maintained a member verbally advised Mazawey of the sewer developments in July, and again in August and September. On October 28, Mazawey notified Zakim that plaintiff was terminating the lease and requested all funds paid to be returned. Mazawey sent plaintiff's notice of lease termination by email, certified mail, and regular mail to Zakim. Zakim rejected plaintiff's lease termination notice as untimely.

On February 2, 2018, plaintiff filed a complaint against 6600 River and Cervelli Real Estate, LLC, alleging claims for: constructive eviction, breach of lease, fraud in the inducement, unjust enrichment, breach of the covenant of good faith and fair dealing, and New Jersey Consumer Fraud Act, N.J.S.A. 56:8-

1 to -228, violations.  Plaintiff's new counsel, Joseph Campisano, Esq., provided a Rule 4:5-1 certification stating, "The undersigned hereby certifies upon information and belief that the matter in controversy is not the subject of any pending arbitration, nor the subject of any other action pending in any court." The certification did not address whether any non-party "should be joined in the action pursuant to R. 4:28 or" was "subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts."  6600 River filed an answer and counterclaims, asserting plaintiff was responsible for rent and other damages.  Specifically, 6600 River alleged that plaintiff was estopped from making its claim because it failed to:  make an application for site plan approval or other approvals of its proposed use of the building to any agency as required under lease rider section 2; timely provide 6600 River with a copy of its submitted application for approvals before July 11, 2016, a condition precedent to plaintiff's right to accelerate the lease termination date; and notify 6600 River of its decision to accelerate the lease termination date by the September 30 deadline provided in lease rider section 2.

The parties litigated the lease dispute for more than twenty-six months completing extensive discovery, including Mazawey's deposition.  In April 2020, plaintiff and 6600 River entered a consent order, which settled their lease

A-3479-22

dispute.[4]  6600 River and its counsel agreed to cooperate with plaintiff in any legal malpractice action filed against defendants.  Plaintiff's settlement agreement with 6600 River stated, "[I]n the event [p]laintiff pursues a claim for malpractice against [p]laintiff's former counsel attorney . . . Mazaw[e]y in connection with the transaction which is the subject of the [c]ivil [a]ction, [d]efendant and [d]efendant's counsel shall, at no cost or expense . . . cooperate."

Five months later, on September 8, plaintiff filed its legal malpractice complaint against defendants, which was thereafter amended.  Defendants answered on November 19, asserting the affirmative defense that "[t]he cause of action alleged in the [c]omplaint is barred by the [e]ntire [c]ontroversy [d]octrine."  Plaintiff served its affidavit of merit on November 30.  In 2023, plaintiff served its expert's report, which opined Mazawey deviated from the standard of care and contributed to "[p]laintiff's losses."  Plaintiff's expert heavily relied on Mazawey's deposition testimony.  On March 1, defendants filed their motion to dismiss based on Rule 4:5-1(b)(2) and the entire

---

[4]  Cervelli Real Estate, LLC, had been dismissed by summary judgment.

A-3479-22

controversy doctrine.[5]

On June 9, the motion court issued an order, accompanied by an oral decision, dismissing plaintiff's complaint. The court, in analyzing Rule 4:5-1(b)(2), first addressed whether it was inexcusable for "[p]laintiff [to have] failed to name . . . [d]efendants in [the lease] litigation previously commenced and settled, in violation of the entire controversy doctrine." The court noted, "[T]he purpose of the Rule 4:5-1(b) certification is to implement the philosophy of the entire controversy doctrine." It was not persuaded by plaintiff's argument that the failure to name defendants was excusable because prior counsel believed it was unnecessary. The court found plaintiff's argument that it was exempt from disclosure because "a legal malpractice action is not required to be joined with pending litigation [and] . . . cannot [be] consider[ed] an action subject to joinder under Rule 4:5-1(b)(2)" was "simply wrong or erroneous." The court concluded that "[t]he Olds[6] decision does not stand for the proposition that all legal malpractice claims are exempt from the entire controversy doctrine" and

[5] Defendants moved to dismiss the case pursuant to Rule 4:6-2(e), or in the alternative, moved for summary judgment. The parties proceeded as a motion to dismiss, relying on materials referenced in the complaint as well as in the pleadings. At oral argument before us, plaintiff's counsel acknowledged the parties mutually relied on the documents submitted to the Law Division.

[6] Olds v. Donnelly, 150 N.J. 424, 443 (1997).

Rule 4:5-1(b)(2)'s disclosure requirements. Further, the court noted that while "[m]ost legal malpractice claims are exempt from the entire controversy doctrine where the prior litigation itself gave rise to the malpractice claim. . . . legal malpractice claims are not exempt where the alleged malpractice accrue[d] before the prior litigation, such as with transactional malpractice." The court thus reasoned there was no exemption from disclosure.

The court highlighted defendants "did not represent [p]laintiff in the prior lease litigation against the landlord" and plaintiff conceded knowing of the malpractice claims before settling the prior action. The court then "examine[d] the factors of . . . substantial prejudice." Noting that plaintiff strategically chose not to disclose defendants as potentially liable parties in the lease litigation, the court found "Mazawey did not have the advice of counsel while deposed and was unaware that his [former] client was seeking to sue him," which was "tantamount to an ambush." The court also found defendants were substantially prejudiced by: plaintiff's delay in bringing the malpractice claim; the loss of their ability to depose key witnesses, namely Russo and Rivas; and the "additional . . . damages" that would not have accrued if "[d]efendants were a party to the lease litigation."

In addressing the lesser available sanctions, the court observed it was "authorized to impose monetary sanctions and or attorneys' fees," but found the financial sanctions "would not . . . cure or address the substantial prejudice." Acknowledging the harsh result, the court dismissed plaintiff's complaint with prejudice.

On appeal, plaintiff specifically argues under Olds, all legal malpractice claims in all circumstances are exempt from the entire controversy doctrine and the application of Rule 4:5-1(b)(2), and the court erred in dismissing its complaint.

II.

We review de novo a trial court's order dismissing a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e). See Robey v. SPARC Grp. LLC, 256 N.J. 541, 554 (2024). We "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "[W]e assume that the allegations in the pleadings are true and afford the [pleading party] all

reasonable inferences." Sparroween, LLC v. Township of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017).

We are not concerned with a pleading party's ability to prove its allegations. Printing Mart, 116 N.J. at 746. "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Myska, 440 N.J. Super. at 482 (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

To establish a prima facie case of legal malpractice, a plaintiff must prove "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Gilbert v. Stewart, 247 N.J. 421, 442-43 (2021) (quoting Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020)). A lawyer is obligated "to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." Cortez v. Grindhart, 435 N.J. Super. 589, 600 (App. Div. 2014)

(quoting St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982)).

"A series of court rules implement the entire controversy doctrine in our courts." Dimitrakopolous v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 109 (2019). "Underlying the Entire Controversy Doctrine are the twin goals of ensuring fairness to parties and achieving economy of judicial resources." Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 79 (App. Div. 2022) (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011)). Rule 4:5-1(b)(2) provides "[e]ach party shall include with the first pleading a certification as to whether . . . any other action . . . is contemplated." The Rule also requires that "each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to [Rule] 4:28 or who is subject to joinder pursuant to [Rule] 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts." R. 4:5-1(b)(2).

While mandatory party joinder under the entire controversy doctrine has been eliminated, certified notice of known potential liable parties in pleadings is required. See id.; Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-1(b)(2) (2024). "The disclosure obligation attaches to each party when

12                                                                    A-3479-22

filing its first pleading and continues thereafter, requiring each to file and serve amended certifications should facts or circumstances change." Kent Motor Cars, Inc., 207 N.J. at 444-45 (citing R. 4:5-1(b)(2)). The Rule "demands only disclosure, explicitly leaving it to the court to decide whether to require that notice of the action be given to any non-party identified or to compel that party's joinder." Id. at 445. Rule 4:5-1(b)(2)'s "requirement serves 'to implement the philosophy of the entire controversy doctrine.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-1(b)(2) (2019)).

The entire controversy doctrine, codified in Rule 4:30A, requires joinder of claims with the goal of encouraging parties to resolve all their disputes in one action. See Dimitrakopoulos, 237 N.J. at 108-09. In 1998, our Court amended Rule 4:30A to restrict the scope of the entire controversy doctrine. C.P. v. Governing Body of Jehovah's Witnesses, 477 N.J. Super. 129, 140 (App. Div. 2023). The Rule's "amendment limited the reach of the [entire controversy doctrine] to non-joinder of claims, as opposed to the pre-1998 formulation of non-joinder of claims and parties." Ibid. The "[p]reclusion of a successive action against a person not a party to the first action has been abrogated except

in special situations." Ibid. (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2024)).

Pursuant to Rule 4:5-1(b)(2), a trial court shall not order the ultimate sanction of dismissal for a party's failure in a prior action to certify the disclosure of a non-party with potential liability unless it determines "(1) the action is a 'successive action;' (2) the failure to provide notice of other potentially liable parties was 'inexcusable;' and (3) the undisclosed party's right to defend the successive action has been 'substantially prejudiced' by that failure." Kent Motor Cars, Inc., 207 N.J. at 440 (quoting Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co, 412 N.J. Super. 1, 11 (App. Div. 2010)).

A court's application of the entire controversy doctrine "is fact sensitive and dependent upon the particular circumstances of a given case." 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 236 (App. Div. 2011); see also Dimitrakopoulos, 237 N.J. at 114. "The doctrine has three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi USA, 243 N.J. at 227 (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). It is well-established "[t]he entire

controversy doctrine raises special concerns when invoked in the setting of legal malpractice." Dimitrakopoulos, 237 N.J. at 109.

III.

"[A] trial court deciding an entire controversy dismissal motion must first determine from the competent evidence before it whether a Rule 4:5-1(b)(2) disclosure should have been made in a prior action because a non-party was subject to joinder pursuant to Rule 4:28 or Rule 4:29-1(b)." 700 Highway 33 LLC, 421 N.J. Super. at 236. We review a trial court's imposition of sanctions for failure to comply with Rule 4:5-1(b)(2) under an abuse of discretion standard. See Karpovich v. Barbarula, 150 N.J. 473, 483 (1997); see also Kent Motor Cars, Inc., 207 N.J. at 445 (providing "[e]nforcement of . . . Rule [4:5-1(b)(2)] is . . . left to the [trial] court"). Our Supreme Court has established that in reviewing a "violation of Rule 4:5-1(b)(2)," the trial court "must exercise its discretion and consider the purposes of the entire controversy doctrine before barring a subsequent action." Karpovich, 150 N.J. at 483.

Plaintiff contends our Supreme Court in Olds held all legal malpractice actions are categorically exempt from the entire controversy doctrine, and, therefore, Rule 4:5-1(b)(2) disclosure requirements do not apply to known legal malpractice claims stemming from the "same transactional facts" against an

15

attorney non-party. Plaintiff acknowledges it was not represented by defendants in the lease litigation, but specifically argues that because all legal malpractice claims are "exempt from the entire controversy doctrine," defendants were not "subject to joinder under [Rule] 4:28 or [Rule] 4:29-1(b)." We agree with the trial court that plaintiff's contention that Olds obviates a party's certification requirements under Rule 4:5-1(b)(2) lacks merit under the facts here. Plaintiff was required to provide a disclosure certification in the lease litigation naming defendants—its prior attorneys—as potentially liable non-parties.

In Olds, our Supreme Court explained that the entire controversy doctrine does not require "the assertion of a legal[] malpractice claim in an underlying action that gives rise to the claim." 150 N.J. at 443. The Court reasoned, "Requiring a client to notify a trial court of a potential malpractice claim relating to one transaction when the attorney or firm continues to represent the client on other matters can intrude on the attorney-client relationship." Id. at 442. Generally, a plaintiff's legal malpractice claim that arises during an attorney's representation is not barred under the entire controversy doctrine. That does not dictate that a known legal malpractice claim against a non-party to an action, in which the attorney does not or has not represented a plaintiff, is exempt from

either disclosure under Rule 4:5-1(b)(2) or the entire controversy doctrine's foundational equitable principles.

The Supreme Court in Karpovich addressed the dismissal of a plaintiff's legal malpractice complaint under Rule 4:5-1(b)(2) and specifically noted that in Olds, which was decided on the same day, the Court recognized the "purposes of the entire controversy doctrine are to promote a complete determination of a matter, to avoid prejudice to absent parties, and to promote judicial economy." Id. at 480 (quoting Olds, 150 N.J. at 431). In Karpovich, the Court reversed the dismissal of plaintiff's legal malpractice action as "too harsh" a sanction after it considered the specific factual circumstances surrounding the failure to disclose and the entire controversy doctrine's goals of "fairness to the parties and fairness to the system of judicial administration." Id. at 480, 483.

Here, plaintiff failed to disclose in its 2018 lease dispute complaint that defendants were potentially liable interested parties and did not thereafter amend its pleadings. See R. 4:5-1(b)(2) (requiring that parties "have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification"). Plaintiff was represented in the lease litigation by new counsel and had filed its lawsuit against 6600 River seeking recovery of

17

funds paid under its lease but strategically decided not to join defendants. Undisputedly, the prior litigation and plaintiff's legal malpractice action stem from the same lease transaction, involve the same parties, and defendants no longer represented plaintiff in any capacity. A central issue in the prior litigation involved the legal services Mazawey had provided to plaintiff regarding the lease.

Plaintiff concedes it was aware of the legal malpractice claims against defendants prior to the conclusion of the lease litigation. Mercedes acknowledged discussing with Campisano plaintiff's legal malpractice claims prior to settling the lease litigation. The parties negotiated the settlement over a period of months with plaintiff securing 6600 River's cooperation in its future malpractice suit against defendants. Plaintiff does not dispute it had sufficient opportunity to comply with Rule 4:5-1(b)(2)'s continuing obligation to disclose that defendants were non-parties potentially liable "on the basis of the same transactional facts." Notably, plaintiff's failure to file an amended certification naming defendants as potentially liable parties precluded the court from considering joinder and defendants' possible intervention, as Mazawey was a central fact witness in the litigation.

A-3479-22

Plaintiff contends if it was required to disclose that defendants were potentially liable non-parties in the lease litigation under Rule 4:5-1(b)(2), then its failure to comply was excusable. Specifically, plaintiff avers its "failure to identify . . . [defendants] in [its] [Rule] 4:5-1(b)(2) certification was excusable because it was made based on an analysis performed by counsel at the time determining that the . . . rules would not require naming [defendants] given the black letter law of Olds." We are unpersuaded that new counsel's legal assessment relieved plaintiff of Rule 4:5-1(b)(2)'s requirement to identify defendants as potentially liable parties.

Regarding whether plaintiff's conduct was excusable, the record reflects plaintiff admittedly sought to use the entire controversy doctrine exemption for legal malpractice claims as a shield from disclosure under Rule 4:5-1(b)(2), while also seeking to wield the information and cooperation it obtained from settling the lease litigation as a sword against defendants. See R. 4:5-1(b)(2). Our Supreme Court has recognized parties may not "decline to reveal the existence of other parties in an effort to achieve an advantage." Kent Motor Cars, Inc., 207 N.J. at 446.

We next consider the court's decision under Rule 4:5-1(b)(2)'s range of sanctions, which includes the "dismissal of a successive action against a party

19

whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses."  "Although the Rule specifies dismissal and imposition of litigation costs as two enforcement mechanisms, they are not the only sanctions available to the court."  Kent Motor Cars, Inc., 207 N.J. at 445. Dismissal of a successive action shall not be ordered for a party's failure to comply with the Rule "unless the failure of compliance was inexcusable and the right of the undisclosed party to defendant the successive action has been substantially prejudiced by not having been identified in the prior action."  Ibid. (quoting Rule 4:5-1(b)(2)).

In enforcing the Rule, a court is charged to consider whether lesser sanctions than dismissal are appropriate for the non-disclosure of a known non-party with potential liability, as there exists a "general preference for addressing disputes on the merits."  Id. at 447.  The court's evaluation of a party's inexcusable conduct in failing to disclose a defendant under Rule 4:5-1(b)(2) and the resulting substantial prejudice to a defendant requires a fact-sensitive detailed analysis.  While we concur with the court's conclusion that plaintiff was required to disclose defendants as non-parties in the lease litigation, we conclude the court's decision lacked the required detailed analysis regarding the available lesser sanctions.  See R. 1:7-4(a) (requiring trial courts to make sufficient

20

"find[ings] [of] . . . fact[s] and state [their] conclusions of law"). "The trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

The court determined defendants were substantially prejudiced by: the delay in being sued; the loss of ability to conduct depositions of material witnesses; Mazawey being deposed without counsel and "ambush[ed]"; and its liability for inflated damages. Plaintiff conceded defendants have an "inability to locate Russo" and potentially Rivas. The record fails to reveal the exact measures taken by plaintiff to provide available information for defendants to locate Russo and Rivas to procure their depositions. While the court made findings regarding substantial prejudice to defendants and briefly acknowledged its power to order lesser sanctions, namely monetary damages, it did not perform a detailed analysis of the possible remedies to address defendants purported substantial prejudice.

For instance, the court did not analyze whether the loss of evidence could be addressed by lesser sanctions including spoliation remedies and whether plaintiff's increased damages could be quantified and limited. Detailed findings are required because it is well-recognized that "[d]ismissal is a sanction of last resort." 700 Highway 33 LLC, 421 N.J. Super. at 236. On remand, the court

shall consider lesser sanctions consistent with this opinion and "must exercise its discretion and consider the purposes of the entire controversy doctrine." Karpovich, 150 N.J. at 483.

The court shall also consider plaintiff's right, as defendants' former client, to be free from "the risk of the disclosure of privileged information." Dimitrakopoulos, 237 N.J. at 111 (quoting Olds, 150 N.J. at 441-42). Our Supreme Court has elucidated that "[b]ecause 'the polestar for the application of the [entire controversy] [doctrine] is judicial fairness,' a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case." Id. at 114 (first alteration in original) (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002)). While plaintiff argues it never waived its attorney-client privilege, we note during Mazawey's deposition in the lease litigation, plaintiff's counsel waived the attorney-client privilege regarding Mazawey's "discussions with . . . Russo." Notably, Russo was plaintiff's designated agent who signed defendants' retainer agreement, had the most communication with Mazawey, was heavily involved with the transaction, and had authority to bind plaintiff. The court, in considering lesser sanctions on remand, shall also consider plaintiff's argument regarding the attorney client privilege against defendants' prejudice.

A-3479-22

In summary, on remand, the court shall specifically address the adequacy of available lesser sanctions as related to plaintiff's inexcusable failure to disclose defendants as potentially liable non-parties in the lease litigation and the specific substantial prejudice to defendants as weighed against plaintiff's interests. See 700 Highway 33 LLC, 421 N.J. Super. at 238-39; see also Kent Motor Cars, Inc., 207 N.J. at 452. The court may seek expansion of the record with additional submissions from the parties with greater proofs, request argument, and conduct a hearing if deemed appropriate to provide a fact-sensitive detailed analysis regarding available lesser sanctions. See Dimitrakopoulos, 237 N.J. at 120-21.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION