**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5237-18T4

GEORGE E. NORCROSS, CONNER
STRONG & BUCKELEW, LLC, NFI,
LP, THE MICHAELS ORGANIZATION,
LLC, COOPER UNIVERSITY HEALTH
CARE, and PARKER MCCAY, PA,

     Plaintiffs-Appellants,

v.

PHILIP DUNTON MURPHY, in his
official capacity as Governor of the
State of New Jersey, THE TASK FORCE
ON THE EDA'S TAX INCENTIVES,
RONALD K. CHEN, in his capacity as
the Governor's Designee under N.J.S.A.
52:15-7, WALDEN MACHT & HARAN
LLP, JIM WALDEN, and QUIÑONES
LAW PLLC,

     Defendants-Respondents,

and

THE NEW JERSEY ECONOMIC
DEVELOPMENT AUTHORITY,

     Nominal Defendant.

_____

Submitted March 30, 2020 – Decided July 6, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1007-19.

Brown & Connery, LLP, and Critchley, Kinum & Denoia, LLC, attorneys for appellants Strong & Buckelew, LLC, NFI, LP, and The Michaels Organization, LLC (William M. Tambussi and Michael D. Critchley, on the joint briefs).

Stern Kilcullen & Rufolo, LLC, attorneys for appellant Cooper University Health Care (Herbert J. Stern, on the joint briefs).

Marino Tortorella & Boyle, PC, attorneys for appellant Parker McCay, PA (Kevin H. Marino, on the joint briefs).

Rahat N. Babar and Theodore V. Wells, Jr. (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, attorneys for respondents (Alison R. Benedon, Kannon K. Shanmugam (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, Yahonnes Cleary (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, Benjamin Moskowitz, of the New York bar, admitted pro hac vice, Jamie Witte (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, and Daniel R. Friel (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, of counsel; Rahat N. Babar and Theodore V. Wells, Jr., of counsel and on the brief).

PER CURIAM

Plaintiffs George E. Norcross, Conner Strong & Buckelew, LLC (Conner Strong), NFI, L.P. (NFI), The Michaels Organization, LLC (Michaels), Cooper University Health Care (Cooper Health), and Parker McCay, P.A. (Parker McCay), appeal from the July 31, 2019 dismissal of count two of their complaint, in which they alleged four companies—Conner Strong, NFI, Michaels, and Cooper Health—that applied for tax incentives from the New Jersey Economic Development Authority (EDA) were wrongfully investigated by the Task Force on EDA's Tax Incentives (Task Force), created by Governor Philip Dunton Murphy.  On appeal, plaintiffs contend that the judge erred in considering extrinsic evidence in dismissing count two but also that their allegations sufficed to survive dismissal.  Alternatively, plaintiffs contend that dismissal should have been without prejudice.  Having reviewed the record in light of the governing law, we affirm the dismissal, with prejudice, of count two of plaintiffs' complaint.

I.

On January 19, 2017, State Auditor Stephen M. Eells provided the Governor's Office with a report (State Auditor's report), which summarized his findings from an audit of three EDA incentive programs for the period of July

3

1, 2011 through September 30, 2016. Stephen M. Eells, N.J. State Legislature, Office of Legislative Servs., Office of the State Auditor, New Jersey Economic Development Authority Selected Incentive Programs (2017). The audit's purpose was "to determine whether adequate controls were in place at the [EDA] to award and administer business[-]incentive program grants in compliance with statutory requirements and whether the [EDA] was monitoring grant recipients for compliance with statutory requirements." Id. at 1.

One of the programs audited was the Grow New Jersey Assistance Program (GROW).[1] Id. at 3-4. Eells observed that when a business (other than proposing a project in the City of Camden) applies for GROW incentives, it must show "that existing full-time jobs are at risk of leaving the state or of being eliminated, and that the award of tax credits under the program will be a material factor in the business'[] decision to retain the jobs or create new jobs in New Jersey." Id. at 3. Thus, the EDA required applicants to submit a cost-benefit analysis, detailing "the costs to continue operations in New Jersey and the lower

---

[1] GROW was created "to encourage economic development and job creation and to preserve jobs that currently exist in New Jersey but which are in danger of being relocated outside of the State." N.J.S.A. 34:1B-244(a). As of September 30, 2016, the EDA had "awarded 207 GROW grants valued at $3.9 billion of which $10.8 million in tax credits ha[d] been certified." New Jersey Economic Development Authority Selected Incentive Programs at 1.

costs to relocate to proposed out-of-state sites." Ibid. Eells examined the EDA's review of the cost-benefit analyses submitted for four projects. Ibid.

Based on the audit, Eells concluded that the EDA lacked adequate controls in its process for awarding tax incentives under GROW. Id. at 2. He recommended that "the [EDA] maintain a more complete file of [its] review of the cost[-]benefit analysis submitted by an applicant," and an "award of tax credits should not be forwarded to the [EDA] board for approval until the proper supporting documentation has been obtained . . . and the out-of-state option has been proven to be more economical." Id. at 3-4. He also observed that the formulas the EDA was using for projects in the City of Camden "might not yield the intended benefits." Id. at 7.

On January 19, 2018, Governor Murphy issued Executive Order No. 3 (EO 3), wherein he explained that "New Jersey's current economic incentive programs have proven less effective than those in other states," and "despite the dramatic increase in tax incentives, New Jersey's economic recovery from the recession caused by the financial crisis has lagged behind competitor states." Exec. Order No. 3 (Jan. 19, 2018), 50 N.J.R. 883(a) (Feb. 20, 2018). Referring to the State Auditor's report, the Governor noted that "the EDA needed to

improve its efforts to verify several aspects of applications submitted by businesses" and "strengthen procedures designed to ensure compliance with the terms of the EDA grants." Ibid. Consequently, he directed the Office of the State Comptroller to "conduct a complete performance audit of [GROW] and the Economic Redevelopment and Growth Grant Program [(ERG)], and predecessor programs, from 2010 onward." The audit was intended to "inform the public about the EDA's operations and assist lawmakers in their deliberations as to whether these programs should be reauthorized when they expire on July 1, 2019." Ibid.

On January 9, 2019, State Comptroller Philip James Degnan issued a report (State Comptroller's report), which summarized his findings and conclusions from the performance audit. Philip James Degnan, State of N.J. Office of the State Comptroller, New Jersey Economic Development Authority: A Performance Audit of Selected State Tax Incentive Programs (2019). He concluded that the EDA lacked key internal controls to administer its incentive programs, monitor recipients' compliance after approving an award, and evaluate the effectiveness of the programs. Id. at 9. Because of the deficiencies in the application and performance review processes, "incentive awards have been improperly awarded, overstated, and overpaid." Id. at 20.

In response to the State Comptroller's Report, Governor Murphy issued Executive Order No. 52 (EO 52). Exec. Order No. 52 (Jan. 24, 2019), 51 N.J.R. 190(b) (Feb. 19, 2019). EO 52 established the Task Force, a "purely advisory" body, "to conduct an in-depth examination of the deficiencies in the design, implementation, and oversight of [GROW] and ERG, including those identified in the State Comptroller's performance audit." Ibid. It also authorized the Task Force to hold public hearings and seek information from "any department, office, division or agency of this State" and "voluntary cooperation from any individuals or entities who have access to information pertinent to the Task Force's mission." Ibid.

The Governor appointed Rutgers law professor Ronald K. Chen to serve as Chair of the Task Force, and he retained Jim Walden, of Walden Macht & Haran LLP (Walden Macht), and Pablo Quiñones, of Quiñones Law PLLC (Quiñones Law), to advise. On March 22, 2019, he further authorized Chen, under N.J.S.A. 52:15-7, "to examine and investigate the management and affairs of the EDA, and the management by any State officer of the affairs of the EDA, relating to New Jersey's tax[-]incentive programs."

Meanwhile, in February 2019, the Task Force began its investigation. Walden sent document-preservation letters to companies that were certified to

and did receive tax credits and to an additional group of companies that were later identified during the investigation. The plaintiff companies were among the companies that received these letters. Walden directed the companies to "preserve all documents and communications that may be potentially relevant to the Task Force's investigation" into deficiencies in administering GROW and ERG, including documents from January 1, 2010 to the present that were related to GROW or ERG incentives received or applied for, data or certifications related to GROW or ERG, jobs created or retained and capital investments made in accordance with program requirements, dates of retention and termination of all New Jersey-based employees, potential relocation of or offers to relocate offices outside of New Jersey, and all communications about the programs with private third parties or employees or agents of the State.

On March 28, 2019, the Task Force held a public hearing, at which it presented an overview of the investigation. It offered testimony from the State Comptroller; a whistleblower, who alleged that her former employer "knowingly submitted false information to [the] EDA in order to get the tax incentives;" and representatives of the Pew Charitable Trusts and the New Jersey Policy Perspective, both of which advocated for caps on the EDA's incentive programs.

Thereafter, Chen issued subpoenas to Conner Strong, NFI, Cooper Health, and Michaels. He sought information relevant to "(a) whether [the] EDA's policies and procedures were sufficient to identify potential fraud or misuse of [GROW and ERG] and (b) whether any company was able to defraud or misuse [these] programs through any oversight failures." Specifically, he focused on information about the consideration of an alternate location, including documents about site visits, business plans about the proposed use of the alternate location, analyses of the suitability of and relocation costs associated with the alternate location, communications with the owner of the alternate location, communications with the EDA about the alternate location, and documents provided to any law enforcement agency, starting on January 1, 2015, related to the alternate location.

On May 1, 2019, Walden wrote to plaintiffs, informing them that the Task Force planned to hold another public hearing the following day. He advised that information adverse to their interests might be offered; therefore, under N.J.S.A. 52:13E-6, they were "afforded the opportunity to submit a sworn, written statement to be incorporated into the record," addressing any such evidence.

At the hearing, Walden explained that the Task Force was concerned that it found "evidence of two schools of thought within the EDA" about whether

applicants proposing projects in the City of Camden were required to show that jobs were at risk of leaving the State. The impact of making such a showing was significant, as a company that did would be able to show a greater net benefit to the State from their project, resulting in a greater GROW incentive. Based on the Task Force's investigation, with the exception of one company, "every single applicant promising to move jobs from within New Jersey to Camden actually certified that they were considering an out-of-state location." Therefore, the Task Force examined applications from four companies that "claimed to have an out-of-state location to demonstrate that jobs were at risk" to determine "the level of diligence that was applied" in reviewing the applications, not to "insinuat[e] that anyone broke the law."

After Walden's opening remarks, there was testimony from Walden's colleague and an EDA senior vice president about a whistleblower formerly employed at the EDA; a different whistleblower; the principal of a corporate site selection firm; the EDA's Managing Director of Underwriting, David Lawyer; the EDA's former President and Chief Operating Officer, Timothy Lizura; and the President of the New Jersey Policy Perspective.

Lawyer explained the EDA's process for evaluating GROW applications, and it was his understanding that all applicants, including those proposing

projects in the City of Camden, were required to show that jobs were at risk of leaving the State. Walden then asked him to discuss the files for the four plaintiff companies. He explained that Conner Strong, NFI, and Michaels all submitted expired letters of intent for their proposed out-of-state locations, and when asked to extend the letters of intent, several months later they produced new letters for similar space with smaller square footages and different configurations, and two of the letters were only good for under two weeks. Upon reviewing these files, Lawyer was concerned that the underwriter had not questioned any of the notable differences or the length of time it took the companies to obtain updated letters of intent. With respect to Cooper Health's application, Lawyer expressed concern that the underwriter did not question its original statement that there were no jobs at risk of leaving the State and the competitor state was to be determined, while Cooper Health then began site visits after it submitted its application.

Lizura disagreed with Lawyer's view that applicants proposing projects in the City of Camden were required to show that jobs were at risk. Aside from this issue, he largely testified about the New Jersey Economic Opportunity Act

11

of 2013, L. 2013, c. 161,[2] which restructured the EDA's tax-incentive programs. He noted that a Parker McCay lawyer was involved in editing a draft of the bill.

Four days after the hearing, the plaintiff companies wrote to Walden, objecting to the Task Force's investigation and "demand[ing] an opportunity to submit a public presentation to the Task Force at its next scheduled hearing." Walden responded, offering each company the opportunity to present fact witnesses at the next hearing.

On May 21, 2019, plaintiffs filed a complaint against defendants. In count two, they sought "a declaratory judgment that N.J.S.A. 52:15-7 does not authorize an investigation of entities and individuals who are not involved in the management and affairs of state government."[3] Plaintiffs asserted that by investigating them, the Task Force, Chen, Walden Macht, and Quiñones Law were "not conducting a bona fide examination of any State officer or the

---

[2] This law is codified as amended in scattered sections of Titles 34 and 52 of the New Jersey Statutes.

[3] Count two was asserted against the Task Force, Chen, Walden Macht, and Quiñones Law. The other counts alleged (1) the creation of the Task Force for its stated purpose was unlawful under N.J.S.A. 52:15-7; (2) the Task Force's denial of trial-like rights at the public hearings was unlawful under the federal and state constitutions and N.J.S.A 52:15-7; (3) compensatory payments to Walden Macht and Quiñones Law were unlawful under N.J.S.A. 52:15-7; and (4) Walden knowingly engaged in the unauthorized practice of law in New Jersey.

management and affairs of any department of State government," thereby exceeding their authority under the statute.

In June 2019, the Task Force planned to hold a third public hearing. Plaintiffs filed an order to show cause with temporary restraints, seeking to preclude the Task Force from holding further public hearings and publishing reports based on its investigation. The Task Force agreed to cancel the hearing to allow the court to address plaintiffs' application. After hearing oral argument, Judge Mary C. Jacobson denied plaintiffs' request in an oral decision.

Soon after, the Task Force released its first report. Ronald K. Chen, Walden Macht & Haran LLP & Quiñones Law, PLLC, Governor's Task Force on EDA Tax Incentives (2019). The Task Force explained that although the focus of the investigation "has been and shall remain on the EDA, [the] investigation necessarily involves a review of companies' tax-incentive applications to determine how the EDA administered the [GROW] and ERG programs." Id. at 6. In explaining the scope of the investigation, the Task Force noted Parker McCay's representation of some applicants raised "red flags," as the firm had been involved in editing the incentive legislation in a way that "seemed to be adding special provisions . . . to benefit particular clients." Id. at

12. The Task Force found that Parker McCay represented each of the plaintiff companies around the time they applied for GROW incentives. Id. at 50, 55-57.

The investigation revealed that the EDA lacked adequate procedures to train its employees to review incentive applications and conduct research to verify information included in the applications. Id. at 3-4. For example, a "simple Internet search revealed that three companies—[Conner Strong, Michaels, and NFI]—committed to move to Camden more than a year before submitting their applications for tax incentives, in which they claimed they were considering relocating to Pennsylvania as a potential alternative." Id. at 4. This information may have led to the denial of incentives, had it been uncovered at the time. Ibid. Further, Cooper Health stated in its application that no jobs were at risk of leaving the State, but then "[t]he EDA subsequently accepted, without any skepticism or further diligence, Cooper Health's later claim that it was considering an out-of-state relocation, and approved Cooper Health for nearly $40 million in tax incentives." Id. at 5. If the award had been based on the statement that no jobs were at risk, the award would have only been around $7 million. Ibid. A more detailed background of each of these concerns was provided later in the report. Id. at 49-63.

After the report was published, Chen reissued subpoenas to the plaintiff companies, again requesting information related to the alternate location the companies stated they considered when applying for GROW incentives.

Defendants moved to dismiss plaintiffs' complaint. Judge Jacobson heard oral argument and, in another oral decision, dismissed plaintiffs' entire complaint with prejudice.

The judge first concluded that N.J.S.A. 52:15-7 authorized the Governor to investigate the EDA. In addressing count two, the judge noted that defendants conceded that N.J.S.A. 52:15-7 did not authorize the Task Force to investigate private entities or individuals; therefore, she considered whether the Task Force exceeded its authority by investigating the plaintiff companies as part of its investigation into the EDA.

The judge determined that it was appropriate to consider the findings in both the State Auditor's report and the State Comptroller's report:

> [T]he [c]ourt can look at . . . the four corners of the complaint, documents referred to in the complaint, even if not attached, matters of public record, or . . . anything relied on in the complaint, without converting the motion to dismiss into one for summary judgment.
> And . . . the complaint attached [EO] 52, which refers to the [State Comptroller's] report. The [State Comptroller's] report has in it the reference to the [State Auditor's] report. The [State Auditor's] report is a matter of public record.

She further explained,

> [T]he aim of the rule about . . . not going outside the complaint is a sense of fairness and not . . . considering things that are a surprise to the plaintiff . . . and, of course that . . . doesn't apply here because the whole history of the concerns raised about [the] EDA are well known to . . . everyone.

Both reports were relevant, as they provided critical context:

> [T]here was a basis in those reports, whether they were true or not, you certainly had . . . independent public entities, the [A]uditor and the [C]omptroller, saying there are issues with the EDA. There's not appropriate oversight. There's not appropriate due diligence. This needs to be addressed. The [C]omptroller had a whole host of recommendations, and then the Governor told the Task Force [to] look into what [we can] do with legislation to try to address these problems. What can we do with the internal management and control of the EDA?

The judge also considered the subpoenas Chen issued, and plaintiffs' claim that they were not issued as part of a bona fide investigation: "The subpoenas, both the earlier ones and the later ones, sought . . . wide-ranging information from . . . plaintiffs, . . . primarily regarding alternate locations[, which] are . . . relevant under the EDA statute." Plaintiffs' reliance on these subpoenas was inadequate to survive the motion to dismiss, as the subpoenas were a response to the Governor's "legitimate concerns about the EDA."

16

The judge then considered the second public hearing, including Lawyer's testimony that the plaintiff companies' applications raised red flags. Having reviewed the hearing transcript, the judge concluded that plaintiffs' claims were unsupported, considering the Task Force's "requirement to do due diligence" and the EDA's "lack of follow-up . . . for these four . . . applications."

Ultimately, the judge concluded that plaintiffs' "claim[s] that the Task Force exceeded its authority and targeted these individuals and [that] it was a sham and not bona fide" were unsupported. The subpoenas and public hearings addressed "legitimate issues for an investigatory task force to explore." To state otherwise, without additional supporting facts, would give rise to bald assertions insufficient to support a cause of action. This appeal ensued.

On appeal, plaintiffs argue that the judge erred in considering the State Comptroller's report and the State Auditor's report in dismissing count two, as both documents constitute evidence outside the pleadings. Next, they argue that the judge erred in dismissing count two because they alleged sufficient facts showing that the investigation was conducted for the prohibited purpose of targeting plaintiffs. Lastly, plaintiffs argue that dismissal should have been without prejudice, as they claim they can plead additional facts revealing that the Task Force improperly targeted them.

## II.

First, we consider plaintiffs' contention that the judge erred in considering extrinsic evidence when deciding the motion to dismiss. We review a motion to dismiss for failure to state a claim de novo, applying the same standard under Rule 4:6-2(e) that governed the trial judge. See Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010).

When considering whether a party has asserted a claim for which relief may be granted, the "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). The inquiry may also include consideration of "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004)). Further, the "court may consider documents specifically referenced in the complaint 'without converting the motion into one for summary judgment.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004)); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

In considering these documents, the court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Although "plaintiffs are entitled to every reasonable inference of fact," ibid., they may not rely on conclusory allegations, hoping that discovery will allow them to find that a cause of action exists, id. at 768. If the judge perceives no legal basis for relief, he or she must dismiss the complaint. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).

Having reviewed plaintiffs' complaint, we conclude that the judge did not err in considering the State Auditor's report and the State Comptroller's report in dismissing count two. Both reports could have been considered on the basis that they are matters of public record. See Banco Popular, 184 N.J. at 183; Teamsters Local 97 v. State, 434 N.J. Super. 393, 414 (App. Div. 2014) (citing Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004)). The Offices of the State Comptroller and the State Auditor are offices of the Executive Branch and Legislative Branch, respectively, N.J.S.A. 52:15C-2(a); N.J.S.A. 52:24-3, and the reports from both offices are publicly available on their respective websites.

Additionally, both reports considered in this matter provide necessary context. As the judge noted, plaintiffs' complaint referenced EO 52 and included a copy as an exhibit. A substantial portion of EO 52 discusses and quotes findings from the State Comptroller's report that signaled a need to investigate deficiencies in the design, implementation, and oversight of the EDA's tax-incentive programs, and the State Comptroller's report, as well as EO 3, discusses the State Auditor's report. Plaintiffs' complaint also cites to a finding in the State Comptroller's report that "the EDA had approved [1000] projects under its various programs," as support for their allegation that "the Task Force immediately singled out [the plaintiff companies]." Although the reference to the State Comptroller's report is brief, and there is no reference to the State Auditor's report, we do not find the link between these documents to be so attenuated as to preclude their consideration.

Moreover, while consideration of a motion to dismiss is generally "limited to examining the legal sufficiency of the facts alleged on the face of the complaint," Printing Mart, 116 N.J. at 746, allowing for review of the State reports in this case serves the purpose for which the exception to this rule was created. The Third Circuit explained,

> The rationale underlying this exception is that the primary problem raised by looking to documents

outside the complaint—lack of notice to the plaintiff—
is dissipated "[w]here [the] plaintiff has actual notice
. . . and has relied upon these documents in framing the
complaint." What the rule seeks to prevent is the
situation in which a plaintiff is able to maintain a claim
of fraud by extracting an isolated statement from a
document and placing it in the complaint, even though
if the statement were examined in the full context of the
document, it would be clear that the statement was not
fraudulent.

[Burlington Coat Factory, 114 F.3d at 1426 (first and
third alterations in original) (citation omitted) (quoting
Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993)).]

Although plaintiffs did not allege fraud, we are persuaded by the Third
Circuit's reasoning, as was the trial judge. Plaintiffs' factual allegations relevant
to count two are limited to commenting on the Governor's intent in creating the
Task Force, as set forth in EO 52, and contesting the lawfulness of the document-
preservation letters and subpoenas. However, to support their cause of action,
plaintiffs' allegations only included "isolated" statements from the documents
that formed the basis for the Task Force's investigation. Both the State Auditor's
report and the State Comptroller's report enhance the narrative and provide
necessary context to understand the Task Force's actions. They reveal the
Governor's legitimate concerns about a State entity's administration of tax-
incentive programs, thereby supporting his creation of the Task Force and the

Task Force's subsequent actions, which included issuing the letters and subpoenas.

III.

Next, we consider plaintiffs' claim that they alleged specific facts showing that defendants violated N.J.S.A. 52:15-7, as a showing of improper motive is sufficient to withstand defendants' motion. Specifically, their complaint alleged the issuance of document-preservation letters and subpoenas and the comments made during the public hearing demonstrate that the Task Force improperly targeted the four plaintiff companies, all of whom are private entities.

N.J.S.A. 52:15-7 does not authorize the Governor to investigate private individuals or entities; rather, it provides in part,

> The Governor is authorized at any time, either in person or by one or more persons appointed by him [or her] for the purpose, to examine and investigate the management by any State officer of the affairs of any department, board, bureau or commission of the State and to examine and investigate the management and affairs of any department, board, bureau or commission of the State. The Governor and the persons so appointed . . . are empowered to subpoena and enforce the attendance of witnesses, to administer oaths and examine witnesses under oath and to require the production of any books or papers deemed relevant or material.
>
> [Ibid.]

22

Any investigation that exceeds the authorization defined in the statue is invalid. See Commc'ns Workers of Am., AFL-CIO v. Christie, 413 N.J. Super. 229, 259 (App. Div. 2010) ("An executive order is invalid if it usurps legislative authority by acting contrary to the express or implied will of the Legislature."). However, "when the Governor is acting consistently with express or implied authority from the Legislature, his or her action should be given 'the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it.'" Id. at 259-60 (internal quotation marks omitted) (quoting Bullet Hole, Inc. v. Dunbar, 335 N.J. Super. 562, 575 (App. Div. 2000)).

The trial judge found, and the parties do not dispute on appeal, that N.J.S.A. 52:15-7 authorized the Governor to create the Task Force to investigate deficiencies in the design, implementation, and oversight of the EDA's tax-incentive programs. The statute also allowed the Task Force to require the production of any relevant or material documents. N.J.S.A. 52:15-7.

In light of the focus of the Task Force's investigation, plaintiffs' claim that the document-preservation letters and subpoenas were issued to improperly target them is a conclusory allegation. As plaintiffs applied to the EDA for tax incentives, the information they supplied in support of their applications is vital to the Task Force's ability to succeed in uncovering deficiencies in the EDA's

evaluation of applications and post-award compliance monitoring. The purpose and wording of the subpoenas indicate the target of the investigation was the EDA's administration of its tax-incentive programs. The investigation of a State agency charged with administering such programs involves the agency's processing and grant of related applications. A natural extension of the investigation is the examination of the applicants' submissions to determine whether the agency properly handled them. Parties—even private parties—have no right to expect that their applications—made to a public agency for public incentives—will remain private or that those applications are immune from public scrutiny, especially those authorized by statute.

As to plaintiffs' concerns about comments referring to them during the second public hearing, we find that plaintiffs have taken any statements out of context. The focus of the hearing was the EDA's processing and oversight practices, not just a review of the plaintiff companies' applications. Any references to the companies were to demonstrate "the level of diligence [the EDA] applied" in reviewing incentive applications, not to "insinuat[e] that anyone broke the law."

Upon consideration of the facts alleged in plaintiffs' complaint and the publicly available information that sheds light on the purpose of the Task Force's

investigation, we conclude that the trial judge did not err in dismissing count two of plaintiffs' complaint for failure to state a cause of action.

## IV.

Finally, we address plaintiffs' argument that dismissal should have been without prejudice. If granted the opportunity to amend their complaint, they would have included additional allegations of improper targeting that occurred after their complaint was filed. Specifically, they assert that "after . . . Norcross published a March 11, 2019 op-ed on NJ.com defending the state's tax[-]incentive programs, 'the Task Force decided to review the applications for those companies' associated with him." Then, in its published report, the Task Force concluded, without a factual basis, that the plaintiff companies were awarded "over $70 million in improperly approved tax-incentive awards." Further, they claim that the report "severely criticized Parker McCay for being 'involved in the drafting process' of the legislative amendments to [GROW]."

Generally, dismissal under Rule 4:6-2(e) should be without prejudice to allow for the filing of an amended complaint. Printing Mart, 116 N.J. at 772. However, judges "are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Interchange State Bank v. Rinaldi, 303 N.J.

Super. 239, 256-57 (App. Div. 1997)); see, e.g., Nostrame v. Santiago, 213 N.J. 109, 128 (2013) (affirming dismissal with prejudice where the "plaintiff conceded that he had no further facts to plead [and] instead fil[ed] the complaint in the hope that he could use the tools of discovery to uncover evidence of wrongdoing").

Having reviewed the Task Force's published report, we conclude that plaintiffs' proposed additions would not save count two from dismissal. First, plaintiffs misstate the reason for the Task Force's response to Norcross' op-ed. Norcross stated that "[t]he [tax] credits were not intended to entice firms that were leaving the state to remain." George E. Norcross, III, George Norcross: We Need Tax Incentives to Continue to Rebuild Camden, NJ.com (Mar. 11, 2019), https://www.nj.com/opinion/2019/03/george-norcross-we-need-tax-incentives-to-continue-to-rebuild-camden.html. The Task Force became concerned because all but one of the "in-state compan[ies] that proposed a move to Camden did . . . certify that jobs were 'at risk' of leaving the State[,] . . . including applications from entities with affiliations to . . . Norcross, including [Conner Strong] and Cooper Health." Governor's Task Force on EDA Tax Incentives at 48. It also became concerned about Michaels and NFI, as they "were affiliated with . . . Norcross in that their applications were related to

[Conner Strong's] application."[4]  Ibid.  Upon a cursory review of the plaintiff companies' applications, "additional concerns arose, and the Task Force determined that an examination of the EDA's oversight of these applications was appropriate."

Additionally, any of the unfavorable comments made about plaintiffs do not show improper motive.  The comments pertaining to misstatements in incentive applications and the possibility that the EDA improperly awarded over $70 million of incentives were findings from the Task Force's investigation of deficiencies in the EDA's application process, not of plaintiffs' actions in making those misrepresentations.

The allegations that plaintiffs propose to include in an amended complaint are insufficient to show that the Task Force improperly investigated private entities.  Plaintiffs' proposed allegations represent findings of the Task Force's investigation, and the fact that they do not portray plaintiffs in a positive light does not cast doubt on the lawfulness of its investigation.  Because plaintiffs have failed to offer any additional allegations to suggest that the Task Force

---

[4]  According to the report, Conner Strong, Michaels, and NFI had "joint plans to move into a new office tower on the Delaware River waterfront of Camden." Governor's Task Force on EDA Tax Incentives at 55.

unlawfully investigated them in violation of N.J.S.A. 52:15-7, we conclude that dismissal with prejudice was appropriate.

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION