**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1081-24

NAGEL RICE, LLP,

    Plaintiff-Appellant,

v.

STARKEY, KELLY,
KENNEALLY, CUNNINGHAM
& TURNBACH,

    Defendant-Respondent.

_____

<div style="margin-left:2em">

Argued October 28, 2025 – Decided November 12, 2025

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000139-24.

Bruce H. Nagel argued the cause for appellant (Nagel Rice, LLP, attorneys; Bruce H. Nagel, of counsel and on the briefs).

Aileen F. Droughton argued the cause for respondent (Traub Lieberman Straus & Shrewsberry LLP, attorneys; Aileen F. Droughton, of counsel and on the brief).

</div>

PER CURIAM

Plaintiff Nagel Rice, LLP, appeals from the November 8, 2024 order granting defendant Starkey, Kelly, Kenneally, Cunningham & Turnbach's Rule 4:6-2(e) motion to dismiss plaintiff's complaint for failure to state a claim. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the facts derived from the record, focusing on the complaint and documents referenced in the pleading, which are largely undisputed. In reviewing the facts asserted in plaintiff's complaint we accord "every reasonable inference of fact." Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 67 (App. Div. 2023) (quoting Major v. Maguire, 224 N.J. 1, 26 (2016)).

Plaintiff began representing a non-party to this action, Benjamin Ringel (Ringel), sometime before 2020. Ringel had been named a defendant in multiple Ocean County Chancery Division lawsuits, including claims filed by his sister, Chana Ringel, and a commercial lender, RCG, LV Debt IV Non-Reit Assets Holdings, LLC (RCG). Defendant and multiple other law firms also represented Ringel in chancery actions.

2

In a Chancery Division lawsuit involving RCG, a judgment was entered in 2016 against Ringel for over $22,000,000. RCG later assigned the judgment to JDWC, LLC (JDWC), resulting in JDWC's intervention in the litigation. On October 25, 2019, the court entered an order pursuant to N.J.S.A. 42:2C-43 imposing a lien against Ringel's interests in real estate properties until the judgment to JDWC was satisfied. In June 2020, JDWC filed a separate collection action against Ringel seeking the remaining $5,759,218 owed on the judgment and temporary restraints against Ringel's interests. The JDWC action was consolidated with Chana Ringel's action. The court ordered the law firm representing JDWC to hold in escrow Ringel's received funds from various commercial properties. Plaintiff later represented Ringel in a chancery action involving JDWC and Chana Ringel, which had settled in 2020 with the parties "arbitrating certain claims."

On March 10, 2021, the court ordered defendant to serve as an escrow agent (escrow order) in the JDWC action. Defendant was to escrow Ringel's "50% of the escrowed funds held by" JDWC's law firm. The court ordered that defendant

> will release the funds to the educational institution(s)
> for payment of outstanding tuition or directly to
> Ringel's legal representatives [plaintiff], Sills Cummis
> & Gross PC . . .[,] and [defendant] for payment of legal

fees upon receipt of documentation verifying the fees or tuition due. Ringel retains the right to request the release of additional funds from the JDWC Escrow in an amount up to 50% of the JDWC Escrow for future bona fide educational expenses incurred by the beneficiaries of the Trust or additional outstanding legal fees with the remaining 50% to be simultaneously disbursed to JDWC. [Defendant] will provide JDWC with copies of all invoices received and payments made to said law firms and educational institutions.

Defendant began overseeing Ringel's portion of funds the same month.

On September 15, 2021, Ringel emailed Kevin Starkey, Esq., a member of defendant, instructing, "Each month you receive a check for $15,000 please send the amount received to [plaintiff] as payment for legal fees going forward." The same day Starkey responded by email to Ringel and copied Robert H. Solomon, Esq., and Bruce H. Nagel, Esq., members of plaintiff. Starkey stated, "I need a monthly invoice from [Nagel] because I have to keep documentation under the [escrow] [o]rder that the expenditure is for legal fees or for your children's tuition and healthcare, I don't need a detailed bill, just something each month I can have for my file." On September 20, Nagel emailed Starkey inquiring about the escrow balance and stating, "We are to get this now."

On October 20, Nagel emailed Starkey asserting that Ringel had "agreed that we get all monthly payments and I have not gotten a check or a reply. If I do not hear from you by Friday, I will file suit to compel the payments." On

A-1081-24

October 28, Starkey confirmed $30,000 would be sent to plaintiff, representing two months of escrow payments. On November 2, Solomon emailed Starkey confirming receipt of the check and indicated, "As you know, [Ringel] has agreed that [plaintiff] is to get the full amount of all monthly payments. On a going forward basis, please send us a check for the full amount of payments you receive."

In January 2022, Starkey sent a payment of $14,700. On February 1 Solomon emailed Starkey again stating, "As you know, [Ringel] has agreed that [plaintiff] is to get the full amount of all monthly payments." Thereafter, at Ringel's direction, Starkey dispersed escrowed funds to "others[,] including lawyers."

On June 1, Nagel emailed Starkey stating, "Confirming our discussion, you or [Ringel] must pay our firm the $18,000 that was sent to [another attorney], and agree that all escrow funds will be paid to our firm per the prior agreement." Starkey responded on the same day stating, "I confirm that you have requested that all future escrow funds be paid to you and your firm going forward. Currently there is approximately $50.00 in the account." Starkey further asserted, "I do not want to be put into the middle of a fee dispute between you and [Ringel], so if you and [Ringel] cannot resolve this issue, I will have to

apply to the [c]ourt for a motion to be relieved as counsel." On June 2, Nagel wrote Starkey referencing Ringel's September 15, 2021 email, asserting that Starkey had confirmed by email that he would pay plaintiff, and directing that Starkey "not disburse any monies." Nagel and Solomon had sent multiple other emails asserting plaintiff's entitlement to the funds.

In October 2022, Chana Ringel and JDWC filed an order to show cause, requiring defendant to release escrowed funds covering Ringel's owed portion of the arbitrator's fee and asserting the arbitrator would not release a decision without payment.[1] On November 18, the court heard arguments on the motion. Plaintiff argued that, during the arbitration between JDWC, Chana Ringel, and Ringel, it had unsuccessfully "moved at least three times to be relieved" as counsel because it was not getting paid. Plaintiff objected to defendant paying any arbitrator fees from the escrowed funds. Plaintiff argued it represented Ringel as an "unwilling participant." Further, plaintiff asserted entitlement to all Ringel's escrowed funds held by defendant because an agreement was allegedly entered with Ringel and Starkey, as evidenced "in [the] series of emails."

---

[1] We include the undisputed facts referenced by the parties and court from the related proceeding for context.

A-1081-24

During the argument regarding the release of funds to the arbitrator, Starkey represented to the court that he had abided by the escrow order and only released escrowed funds that Ringel had authorized pursuant to the order. Starkey asserted he "did not agree" that the funds would go to plaintiff and added that he did not think it was "within [his] authority to make an agreement as to where those funds would go." Further, Starkey relayed that any purported agreement would be contrary to the court's order because the order authorized only Ringel to direct distributions. Nagel admitted before the court that Ringel had "discretion as to certain areas he could use his share of the funds in escrow," but argued Ringel elected to "pay our firm." The court ordered payment to the arbitrator from the escrowed funds held by defendant because Ringel had the right to distribute "funds collected and escrowed . . . for certain specific purposes," including "legal fees," and that payment to the arbitrator falls within "legal fees."

In February 2023, Ringel requested defendant issue a second payment to the arbitrator from the escrowed funds. Plaintiff objected via email asserting, "[A]nyone [that] seeks to take those funds . . . may be liable for tortious interference." On February 7, Chana Ringel moved for an order authorizing defendant to make the second payment to the arbitrator from the escrowed funds.

A-1081-24

Plaintiff again objected. On February 15, defendant moved to be relieved as Ringel's counsel and as the escrow agent. Ringel certified he had not entered into an agreement for plaintiff to receive all the escrowed funds. He also noted he had paid plaintiff "over $600,000."

On March 3, the court heard arguments on the motions and ordered defendant to pay the arbitrator. The court granted defendant's motion to withdraw as counsel and modified the escrow order, providing that the "[e]scrow [wa]s transferred to Bruce Nagel, Esq.['s] [f]irm, subject to the same conditions." Thereafter, plaintiff moved to modify the March 3 order and strike paragraph three, which directed JDWC to cease releasing Ringel's portion of the escrowed funds, effectively pausing any distribution.

JDWC cross-moved for the court to reconsider plaintiff's appointment as the escrow agent stating that it "is likely to result in more disputes, as Ringel will now be in conflict with the agent of the Ringel [e]scrow." In April, the court heard the parties' motions regarding the March 3 order and granted plaintiff's motion to strike paragraph three, resuming escrow distribution. The court denied JDWC's cross-motion to remove plaintiff as escrow agent but reiterated that the escrow order "will remain in full force and effect" and retained jurisdiction to decide disputes related to the disposition of escrowed funds.

A-1081-24

On April 7, while motion proceedings regarding the March 3 order were ongoing before the Ocean County court, plaintiff filed a complaint against defendant in Essex County for breach of contract. Plaintiff later filed an amended complaint requesting a jury demand. Plaintiff alleged it had a contract with Ringel for the release of all future escrowed funds. The amended complaint posited that a contract was also entered with defendant to release Ringel's escrowed funds, as evidenced by emails between the parties, and that defendant breached the contract by failing to make escrow payments only to plaintiff.

After defendant filed a motion to dismiss, an Essex County trial judge issued an order dismissing the complaint without prejudice. The judge found plaintiff's claims had to be brought before the Ocean County Chancery Division trial court presiding over "the consolidated Chancery Action."

A-1081-24

On August 6, 2024, plaintiff filed a new complaint against defendant before the court "as part of the JDWC action." [2] Plaintiff again alleged that the September emails were sufficient to indicate that "the parties reached [an] agreement." About a month later, defendant moved to dismiss plaintiff's complaint or, alternatively, to stay the matter. Defendant argued Starkey never entered an agreement with plaintiff to release all of Ringel's escrowed funds and that no such agreement could exist without violating the court's escrow order. Plaintiff argued the complaint contained sufficient facts to glean a breach of contract claim. While plaintiff argued there were many email communications, the parties had no formal written agreement, and no specific oral agreement was alleged.

During oral argument, the court referenced plaintiff's alleged facts and confirmed with plaintiff's counsel that the complaint "reference[d] the emails"

---

[2] At oral argument before us, plaintiff argued it had asserted a breach of fiduciary duty claim in its complaint and that it was also challenging the court's dismissal of that claim. A liberal review of plaintiff's complaint does not reveal a breach of fiduciary duty claim. Further, we note plaintiff conceded the issue was not briefed on appeal. We decline to consider issues that are not formally briefed and deem issues not properly raised as waived. See In re Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 49 n.1 (App. Div. 1989) (dismissing an appeal that was not briefed); State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (disallowing consideration of issues not formally briefed by defendant); Rule 2:6-2(6).

at issue regarding whether an agreement was entered with defendant. After the court recited the history of Ringel's matters, the court found plaintiff averred insufficient facts to support a contract with defendant as to the release of all escrowed funds. The court also found that if such a contract had been entered it would have violated the escrow order, which governed defendant's disbursement of Ringel's escrowed funds. The court noted the escrow order gave Ringel the discretion to authorize defendant to make payments from the escrowed funds for legal fees and educational expenses. It observed there was no provision permitting "the future of all these payments . . . going to" plaintiff. The court added that if plaintiff entered an agreement with defendant that conflicted with the escrow order—removing Ringel's discretion to designate where payments were made—it would be unenforceable. While plaintiff did not argue that an opportunity to amend the complaint should be afforded, the court found no "amendment of this complaint" would change the result.

On appeal, plaintiff contends the court erred by ruling that plaintiff failed to adequately state a claim supporting an agreement with defendant, and an agreement between the parties would be contrary to the escrow order.

II.

The "decision granting or denying a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e) is reviewed de novo." Maia v. IEW Constr. Grp., 257 N.J. 330, 341 (2024). "The plaintiff is entitled to the benefit of every reasonable inference as we 'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024) (omission in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "When deciding a motion to dismiss under Rule 4:6-2(e), the test to determine 'the adequacy of a pleading' is 'whether a cause of action is "suggested" by the facts.'" Doe v. Est. of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023) (quoting MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"Where, however, it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is

appropriate." Johnson v. City of Hoboken, 476 N.J. Super. 361, 371 (App. Div. 2023) (quoting Sparroween, LLC v. Township of West Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017)). Indeed, "the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard." AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 311 (2024) (quoting Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012)).

Courts may consider documents specifically referenced in the complaint "without converting the motion into one for summary judgment." Myska v. New Jersey Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004)). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Ibid. (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)).

To prevail on a breach of contract claim, a plaintiff must prove the following elements by a preponderance of the evidence:

> [F]irst, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[ ] did what the contract required [it] to do"; third, that "defendant[ ] did not do what the contract required [it]

13

to do[,]" defined as a "breach of the contract"; and fourth, that "defendant['s] breach, or failure to do what the contract required, caused a loss to the plaintiff[ ]."

[Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (second and seventh alterations in original) (quoting Model Jury Charge (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

"[T]he fundamental elements of contract formation are mutual assent, offer and acceptance, [and] consideration." Fazio v. Altice U.S., 261 N.J. 90, 103 (2025) (alterations in original) (quoting Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 65 (2024)) (internal quotation marks omitted). "'A contract arises from [an] offer and acceptance, and must be sufficiently definite "that the performance to be rendered by each party can be ascertained with reasonable certainty."'" Goldfarb v. Solimine, 245 N.J. 326, 339 (2021) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). Further, "[t]he parties are bound by the contracts they make for themselves, with the understanding that 'a meeting of the minds is an essential element to the valid

14

consummation' of any agreement." Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Ctr. 48 Ltd. P'ship v. May Dep't Stores Co., 355 N.J. Super. 390, 406 (App. Div. 2002)). "Mutual assent to an agreement requires mutual understanding of its terms." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 447 (2014). "As a basic premise, it is true that 'no contract is enforceable . . . without the flow of consideration--both sides must "get something" out of the exchange.'" Oscar v. Simeonidis, 352 N.J. Super. 476, 484 (App. Div. 2002) (quoting Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, (1983)). However, "[t]o the extent any ambiguity exists, . . . a court may discern the parties' intent from evidence bearing on the circumstances of the agreement's formation, and of the parties' behavior in carrying out its terms." EQR-LPC Urban Renewal N. Pier, LLC v. City of Jersey City, 452 N.J. Super. 309, 319 (App. Div. 2016) (citations omitted). "The interpretation of a contract is generally subject to de novo review." Arbus, Maybruch & Goode, LLC v. Cogen, 475 N.J. Super. 509, 515 (App. Div. 2023).

III.

Plaintiff contends its complaint asserts a cognizable breach of contract cause of action. Specifically, plaintiff contends the parties' emails formed a contract and defendant breached the contract by failing to disburse all of Ringel's

15

escrowed funds to plaintiff for its legal fees. Having reviewed the complaint and emails, we disagree because no contract was formed with defendant.

It is undisputed that the court's escrow order provided Ringel with the discretion to direct defendant to disburse escrowed funds for legal fees owed to various law firms and for Ringel's children's educational expenses. The court's escrow order did not give defendant, as the escrow agent, the authority to decide who would receive funds, the priority of the funds disbursed, or the amount paid.

Plaintiff's complaint alleges that "the parties reached th[eir] agreement in September" and relies on the referenced emails to memorialize the parties' alleged contract. Plaintiff initially relies on Ringel's September 15, 2021 email instructing Starkey, "Each month you receive a check for $15,000 please send the amount received to [plaintiff] as payment for legal fees going forward." Notably, while Ringel's email authorized defendant to make payments to plaintiff from that date forward, it did not state that plaintiff was to receive $15,000 each month in perpetuity from the escrowed funds. Ringel's email does not mention an agreement with plaintiff for all future escrowed funds nor does he state the authorized future payments to plaintiff are permanent and interminable.

A-1081-24

Plaintiff next argues that Starkey's email response to Ringel and the parties' other emails sufficiently demonstrate that the parties entered a contract for defendant to disburse all the escrowed funds to plaintiff. Starkey sent an immediate response to Ringel's email, copying plaintiff, that "each month" Starkey required "a monthly invoice from" plaintiff "to keep documentation under the [escrow] [o]rder that the expenditure is for legal fees or for your children's tuition and healthcare." A plain reading of Starkey's email does not evidence a contract between the parties. Stated another way, no contract was formed between the parties simply because Starkey required plaintiff to provide an invoice for each month that Ringel authorized plaintiff to receive an escrow disbursement. We conclude, when viewing the emails liberally and providing all reasonable inferences, that plaintiff has failed to state a claim because the parties' emails do not demonstrate a meeting of the minds with consideration to enter a contract.

Further, plaintiff references emails and claims they show a course of conduct. They do not. Instead, the emails show that Starkey followed Ringel's directions and the few payments made to plaintiff did not establish an enforceable course of conduct governing future disbursements from the escrow.

17

A-1081-24

We conclude the trial court soundly found, "plaintiff has not pled sufficient facts . . . that there was any agreement."

We also reject plaintiff's argument that the court erred in finding that any agreement between the parties to release escrowed funds would have violated the court's escrow order and been unenforceable. The court was familiar with the parties and action, had entered the escrow order, and was interpreting its own order in finding that, had the parties entered a contract to release escrowed funds, it would have violated the escrow order. After a de novo review of the plain meaning of the escrow order we discern no reason to disturb the court's interpretation.

Finally, we recognize that a trial court's dismissal of a complaint under Rule 4:6-2(e) is generally without prejudice. Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009) ("A motion to dismiss pursuant to Rule 4:6-2(e) ordinarily is granted without prejudice."). "[A] dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' . . . or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (citations reformatted) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div.

1987) then quoting <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman, and Stahl, P.C.</u>, 237 N.J. 92, 107 (2019)).

In this case, as we have concluded plaintiff failed to sufficiently state a breach of contract claim, even liberally viewing the facts alleged in its complaint, we discern no reason to disturb the court's determination that further amendment would be futile and dismissal with prejudice was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1081-24